IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MERVIN R. BARTEAUX,

        Petitioner,

    v.

JEFF PREMO, Superintendent,
Oregon State Penitentiary,

        Respondent.

Civil No. 6:16-cv-00787-BR

OPINION AND ORDER

OLIVER W. LOEWY
Assistant Federal Public Defender
101 SW Main Street
Suite 1700
Portland, OR 97204

      Attorney for Petitioner

ELLEN F. ROSENBLUM
Attorney General
KRISTEN E. BOYD
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301

      Attorneys for Respondent

1 - OPINION AND ORDER -

BROWN, Senior Judge.

Petitioner, an inmate at the Oregon State Penitentiary, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Court DENIES the First Amended Petition for Writ of Habeas Corpus (ECF No. 25).

## BACKGROUND

On May 28, 2002, a Multnomah County grand jury indicted Petitioner on two counts each of Sodomy in the First Degree and Sexual Abuse in the First Degree, and six counts of Unlawful Sexual Penetration in the First Degree. The charges arose from Petitioner's sexual acts against his developmentally disabled cousin over the course of a year. In particular, Petitioner, then married and nearly 61 years old, would take his developmentally disabled 46-year-old cousin out to fast food restaurants for lunch and then engage in sexual acts with her in his van. The victim ultimately disclosed the sexual acts to her mother, and Petitioner confessed. Petitioner provided an apology letter to the victim and outlined the nature of the sexual abuse to the investigating officer.

Counsel was appointed to represent Petitioner. After two judicial settlement conferences, and after Petitioner rejected the prosecution's offer of a plea agreement for eight years of imprisonment, the case proceeded to a jury trial. On December 2, 2002, the case was called for trial. At the start of the

proceeding, court-appointed counsel alerted the trial judge that Petitioner wanted to retain a different attorney to represent him. Petitioner explained to the trial judge that he had been in touch with the proposed retained counsel "a few months" earlier, but at that time was financially unable to hire him. Now in a different financial position, however, Petitioner wished to retain the private attorney in place of his court-appointed attorney. Following a lengthy colloquy and an in-chambers meeting among the trial judge, counsel, and Petitioner, the trial nevertheless proceeded with court-appointed counsel remaining on the case.

The sole issue at trial was whether the victim was capable of consent under Oregon law. The jury ultimately found Petitioner guilty on all counts by a 10-2 vote. The trial judge imposed consecutive and concurrent sentences totaling 180 months of imprisonment.

Petitioner filed a direct appeal, asserting as error the trial judge's denial of Petitioner's motion for judgment of acquittal on all counts based upon an argument that the victim was capable of consent. The Oregon Court of Appeals issued a written opinion affirming the conviction and sentence. *State v. Barteaux*, 212 Or. App. 118, 157 P. 3d 225 (2007). The Oregon Supreme Court denied a petition for review. *State v. Barteaux*, 343 Or. 160, 164 P.3d 1161 (2007).

Petitioner then filed a petition for state post-conviction relief ("PCR"). Following an evidentiary hearing, the state PCR trial judge denied relief. On appeal, the Oregon Court of Appeals reversed and remanded the case in light of the United States Supreme Court's then-recent decisions *Lafler v. Cooper*, 566 U.S. 156 (2012) and *Missouri v. Frye*, 566 U.S. 134 (2012). *Barteaux v. Mills*, 250 Or. App. 767, 281 P.3d 661 (2012). The state sought reconsideration, which the Court of Appeals allowed, and the court then adhered to its original opinion. *Barteaux v. Mills*, 252 Or. App. 313, 286 P.3d 1243 (2012). On remand, the PCR trial court held another evidentiary hearing and again denied relief. Resp. Exh. 146. On appeal, the Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review. *Barteaux v. Taylor*, 273 Or. App. 820, 362 P.3d 1215 (2015), *rev. denied*, 358 Or. 550, 368 P.3d 25 (2016).

On May 5, 2016, Petitioner filed a *pro se* Petition for Writ of Habeas Corpus with this Court. The Court appointed counsel, who filed a First Amended Petition for Writ of Habeas Corpus alleging the following claims for relief:

CLAIM I: Petitioner was denied his choice of counsel, in violation of his right to counsel, as guaranteed by the Sixth and Fourteenth Amendments.

CLAIM II: The trial evidence was insufficient to prove guilty beyond a reasonable doubt, in violation of Petitioner's Fourteenth Amendment right to due process.

CLAIM III: The "incapable of consent by reason of mental defect" element of the offenses of conviction is vague in

4 - OPINION AND ORDER -

violation of Petitioner's Fourteenth Amendment right to due process.

CLAIM IV: Petitioner's convictions violate his Fourteenth Amendment right to due process because he is actually innocent of the offenses of the conviction.

CLAIM V: Trial counsel rendered ineffective assistance of counsel, in violation of Petitioner's Sixth and Fourteenth Amendment right to effective assistance of counsel.

A. Trial counsel failed to adequately assert Petitioner's right to counsel of choice.

B. Direct appeal counsel failed to raise the claim that the trial court had violated Petitioner's Sixth and Fourteenth Amendment right to be represented by counsel of his choice.

C. Trial counsel failed to adequately advise Petitioner regarding the advantages, disadvantages, and risks in rejecting or accepting the State's plea offer.

D. Trial and direct appeal counsel failed to adequately assert and argue that the "incapable of consent by reason of mental defect" element of the offenses of conviction is unconstitutionally vague.

E. Trial and direct appeal counsel failed to adequately assert and argue that the trial evidence was insufficient to prove guilt beyond a reasonable doubt.

F. Trial and direct appeal counsel failed to adequately assert and argue that Petitioner's conviction violated his Fourteenth Amendment right to due process because he is actually innocent of the offenses of conviction.

CLAIM VI: Based exclusively on the written record, not on hearing from witnesses at an evidentiary hearing, the state circuit court judge in post-conviction proceedings made credibility determinations adverse to Petitioner (which were affirmed on appeal) in violation of his right to due process guaranteed by the Fourteenth Amendment.

CLAIM VII: The cumulative effect of the prejudicial errors made in Petitioner's case mandate that his convictions and sentences be vacated.

Respondent argues that Petitioner procedurally defaulted the grounds alleged in Claim I; Claim III; sub-parts A, B, D, and F, of Claim V; Claim VI; and Claim VII. As to Claims II and sub-claim D of Claim V, Respondent argues the state court decisions denying relief on the merits are entitled to deference.

Petitioner concedes he procedurally defaulted the grounds alleged in Claims I, III, and sub-parts A, D, and E of Claim V, but argues the procedural default should be excused. Petitioner also argues that the state court decisions denying relief on Claim II and sub-part D of Claim V are not entitled to deference. Petitioner does not address the remaining claims for relief.

## DISCUSSION

## I.   Deference to State Court Decisions

### A.   Legal Standards

An application for writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct and a habeas

petition bears the burden of rebutting the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially distinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief only "if the state court identifies the correct legal principle from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id*. at 410. The state court's application of clearly established law must be objectively unreasonable. *Id*. at 409.

"Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). Where a state court's decision is not accompanied by an explanation, "the habeas petitioner's burden still must be met by

showing there was no reasonable basis for the state court to deny relief." *Id.* Where, however, the highest state court decision on the merits is not accompanied by reasons for its decision but a lower state court's decision is so accompanied, a federal habeas court should "look through" the unexplained decision to the last related state-court decision that provides a relevant rationale, and presume the unexplained decision adopted the same reasoning. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

## B.   Claim II - Insufficient Evidence

In Claim II, Petitioner alleges there was insufficient evidence to prove his guilt beyond a reasonable doubt. Specifically, Petitioner alleges the state failed to introduce sufficient evidence to convince a rational juror that the victim was incapable of consent by reason of mental defect. Petitioner argues that the prosecution's expert witness, Dr. Genevieve Arnaut, provided insufficient testimony to support such a finding.

"[E]vidence is sufficient to support a conviction whenever, 'after viewing the evidence in light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Parker v. Matthewes*, 567 U.S. 37, 43 (2012) (emphasis added) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Cavazos v. Smith*, 565 U.S. 1, 6 (2011). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts

in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *see also Cavazos*, 565 U.S. at 4 (holding that "[i]t is the responsibility of the jury-not the court-to decide what conclusions should be drawn from evidence admitted at trial"); *Long v. Johnson*, 736 F.3d 891, 896 (9th Cir. 2013) (holding that the court must respect the exclusive province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts), *cert. denied*, 134 S. Ct. 2843 (2014).

"[A] state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas [review] unless the 'decision was objectively unreasonable.'" *Parker*, 567 U.S. at 43 (quoting *Cavazos*, 565 U.S. at 4). This Court must resolve doubts about the evidence in favor of the prosecution and examine the state court decisions through the deferential lens of 28 U.S.C. § 2254(d). *See Long*, 736 F.3d at 896 (explaining that a habeas court owes a "double dose" of deference when reviewing a state court ruling on sufficiency of the evidence); *Gonzales v. Gipson*, 701 F.Appx. 558, 559 (9th Cir. 2017) (same). Under this doubly deferential standard, to grant relief a court "must conclude that the state court's determination that a rational jury could have found that there was sufficient evidence of guilt, *i.e.*, that each required element was proven beyond a reasonable doubt, was

objectively unreasonable." *Boyer v. Belleque*, 659 F.3d 957 (9th Cir. 2011).

Each of the ten counts upon which Petitioner was convicted included as an element of the crime that the victim was incapable of consent by reason of mental defect. Under Or. Rev. Stat. § 163.315(1)(b), "[a] person is considered incapable of consenting to a sexual act if the person is . . . [m]entally defective." "Mentally defective" is defined in Or. Rev. Stat. § 163.305(3) as meaning "that a person suffers from a mental disease or defect that renders the person incapable of appraising the nature of the conduct of the person." As described by the Oregon Supreme Court:

> [T]he question whether a person lacks the capacity to consent by reason of mental defect turns on whether the person is capable of judging or analyzing the worth, significance, or socially accepted status of engaging in particular sexual activity. Put another way, the question is whether the person is capable of assessing the personal and social consequences of his or her decision to engage in that activity.

*State v. Reed*, 339 Or. 239, 249, 118 P.3d 791 (2005).[1]

At trial, the state offered the testimony of medical expert Dr. Genevieve Arnaut to support allegations that the victim was not capable of consent by reason of mental defect. Dr. Arnaut

---

[1]The interpretation and application of Oregon's law regarding what it means to be "incapable of consent by reason of mental defect" is a state-law question not subject to review by this Court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions); *Mendez v. Small*, 298 F.3d 1154, 1158 (9th Cir. 2002) (state courts have "the last word on the interpretation of state law").

testified that the victim had an IQ of 53, placing her in the bottom 0.1 percent of the population. Dr. Arnaut found the victim had limited vocabulary, difficulty understanding abstract concepts, and limited problem-solving skills. Overall, Dr. Arnaut opined, the victim's communication, daily living, and socialization skills placed her in the bottom 0.3 percent of the population, and that the victim's overall mental age was the equivalent of a six-year-old child. Dr. Arnaut expressed her view on the victim's ability to consent to sexual acts as follows:

> My concern based upon the level of functioning that I saw and something that I noted in my report is that I was - it felt to me that she would be unable to come up with complex or novel solutions to a problem. So, for example, she couldn't even rephrase something when I wasn't understanding what she was telling me. Put her in a more complex situation, [I have] concerns she would be able to problem solve very well or even know there were certain avenues open to her. For example, if she felt that someone was approaching her inappropriately, that there might be protective services who would be available to help her, I would not expect that she might know that.

> So I would think her problem-solving skills were relatively limited, as would be her verbal skills, in dealing with the situation.

> Another concern that I would have is based on my reading of the literature in this area, which indicates that individuals diagnosed with mental retardation or disabling conditions are often particularly vulnerable to individuals in the family, because they are trained over a number of years to become dependent upon family members and not to question what family members ask them to do and have difficulty problem solving around those issues. So I think she was doubly vulnerable . . . because of this being an alleged family situation as well as because of her - the disabilities that were evidenced to me in the evaluation.

The Oregon Court of Appeals found Dr. Arnaut's testimony alone was sufficient to support the jury's verdict. As the Court of Appeals explained:

> Arnaut's testimony that the victim may not "even know that there were certain avenues open to her" and that she was unlikely to "question what family members ask [her] to do" supports the reasonable inference that the victim's mental defect prevented her from understanding that she could decline defendant's sexual advances. Without such understanding, the victim was unable to "exercise . . . judgment and . . . mak[e] choices based on an understanding of the nature of [her] own conduct."

*Barteaux*, 212 Or. App. at 122 (quoting *Reed*, 339 Or. at 244) (alterations in original). The Court of Appeals concluded that "a rational juror could have inferred that [the victim] lacked the capacity to consent from Arnaut's testimony that [the victim's] mental defect prevented her from 'understand[ing] . . . how to say no.'" *Id.*

The Court of Appeals went on to note that, although Arnaut's expert testimony was alone sufficient to support the jury's verdict, the state also introduced evidence of Petitioner's own acknowledgment that he believed the victim lacked the capacity to consent. "Defendant's acknowledgment, based on his interaction with the victim, that she was not capable of consent lends further support to the inference that the victim did not understand that she could choose whether to engage in sexual relations with defendant." *Barteaux*, 212 Or. App. at 123 (footnote omitted).

Finally, the Oregon Court of Appeals addressed Petitioner's contention that there was evidence from which the jury could have reasonably inferred that the victim *was* capable of consenting to sexual relations:

> The existence of that evidence, however, does not affect our analysis. For instance, a reasonable juror could infer from the victim's own testimony that she understood the moral implications of having sexual contact with defendant. *See* 339 Or. at 245, 118 P.3d 791. As the Supreme Court explained in *Reed*, "[t]he jury, however, was free to reject her testimony and to rely on other testimony and evidence relevant to its determination whether the victim's mental defect had rendered her incapable of consenting to sexual contact." *Id.* at 245, 118 P.3d 791. Thus, here, we are concerned only with whether there was evidence that supported the jury's finding that the victim lacked the capacity to consent by reason of her mental defect; we do not sit as factfinder and choose between competing inferences.

*Barteaux*, 212 Or. App. at 124.

Having carefully reviewed the entire record, this Court concludes the Oregon Court of Appeals' decision was not objectively unreasonable. The Court notes a rational juror reviewing the evidence could easily choose amongst competing inferences and determine that the victim's mental defect rendered her incapable of consenting to sexual contact. That evidence addressed, among other things, the victim's limited vocabulary, difficulty understanding abstract concepts, and limited problem- solving skills placing her in the bottom 0.1 percent of the population with a mental age-equivalency of a six-year-old. The jury was also able to assess the victim's trial testimony rationally and to conclude from their

observations of the victim that her limited level of executive functioning and ability to express herself verbally. They heard the victim identify herself as "23" years of age, when in reality she was 46; they heard that she can write her first and last name and a few of her cats' names, but nothing else, and that she does not know how to read; she lives at home with her mother, requires care in her daily living activities, and is subject to a guardianship.

Moreover, the jury heard that Petitioner told a police officer that the victim was mentally challenged and that she could not consent or could consent only "to a degree." On cross-examination, Petitioner agreed that he was the "adult" in the situation, and the victim was the "child."

Finally, as the Oregon Court of Appeals found, Dr. Arnaut's testimony provided a clear nexus between the victim's disability and her incapacity to appraise the nature of the sexual contact. Because of the victim's disability and her familial status with Petitioner, the victim would be unable to consider her options.

Based on the record and viewing the evidence in the light most favorable to the prosecution, the Court finds there was sufficient evidence that any rational trier of fact could have found the essential elements of the crimes charged against Petitioner. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992). Accordingly, the state court decision denying relief on this claim was not an unreasonable

application of clearly established federal law, and Petitioner is not entitled to habeas relief.

### D. Ground V(C) – Ineffective Assistance for Failure to Advise on Plea Offer

In sub-part C of Ground V, Petitioner alleges trial counsel was ineffective when he failed to adequately advise Petitioner regarding the risks and benefits of rejecting the state's plea offer. Petitioner presented this claim to the state PCR court, which denied relief.

Under well-established Supreme Court precedent, the right to the effective assistance of counsel extends to "the plea-bargaining process," including the decision whether to accept or reject a plea offer. *Lafler*, 566 U.S. at 162; *Frye*, 566 U.S. at 145; *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To establish ineffective assistance, a petitioner must show that "counsel's performance was deficient," and that counsel's "deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1994).

To show deficient performance, a petitioner "must show that counsel's representations fell below an objective standard of reasonableness." *Id.* at 688. The question is not whether counsel's advice was correct, but "whether that advice was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). To establish prejudice in the context of a plea claim, a petitioner "must show the outcome of the plea process would have been different with

competent advice." *Lafler*, 566 U.S. at 163. Where a petitioner rejects the state's plea offer, "he must show that, but for the ineffective advice of counsel, there is a reasonable probability he would have accepted the plea offer and received a sentence less severe than the sentence imposed." *Crawford v. Fleming*, 323 F.Supp.3d 1186, 1191 (D. Or. 2018) (citing *Lafler*, 566 U.S. at 164).

In the PCR proceeding on remand from the Oregon Court of Appeals, Petitioner presented an affidavit stating as follows:

> I believe that I attended two settlement conferences. One was before Judge Frantz, I do not remember the name of the other judge. The Judges told me, about a trial, that it would more than likely make the length of time that I might serve longer, I recall a proposed sentence of 8 years for a negotiated settlement.
>
> At the time of the 8-year offer, [trial counsel] had given me absolutely no indication as to what my prospects were should I go to trial. He neither encouraged nor discouraged me to participate in negotiations. He said nothing one way or the other. I had no basis for evaluating whether the offer was good or bad. He told me that it was up to me. He did not ask whether I had questions. He did not ask if he I [sic] would accept the offer.

Resp. Exh. 133, p. 6.

The state countered with an affidavit from Petitioner's trial counsel, who stated:

> I certainly advised [Petitioner] that for each separate sexual act consecutive sentences could be imposed. I told him that I agreed with Judge Frantz that he would get more time than the pretrial offer due to repeated contact and that he was a middle-aged man having sexual contact with his developmentally delayed relative. In fact, the judge only had to run one count of sodomy

16 - OPINION AND ORDER -

partially consecutive to reach the total of 180 months. His assertion that he did not know about the possibility of consecutive sentences is simply not true. Judge Frantz was very careful to explain this concept to him and so did I. I did not tell him that convictions were certain. Although petitioner admitted to much of the sexual contact I felt that there was a legitimate issue as to whether the victim has the mental capacity to consent. Although it is often possible to predict the outcome of a trial for a client, petitioner's case could have gone either way. However, he was told it was a one-issue case and if the jury believed the victim could not legally consent he would be convicted of all, or at least most, of the charges. I did not urge him to go to trial. Judge Frantz and I both urged caution. Petitioner often referred to his health issues and felt he would not survive the offered prison term. I believe this consideration and not wanting to go to prison as a sex offender caused him to choose trial.

Resp. Exh. 143, pp. 1-2. The state also submitted an affidavit

from the prosecutor, who described the settlement conferences

before the criminal trial:

> Petitioner was advised of his chances at trial, including the probable outcome of trial, by three different judges: presiding criminal judge Julie E. Frantz on November 19, 2002, Judge Jean Maurer on November 26, 2002, and Judge Janice Wilson on November 29, 2002. On November 19, 2002, I extended a plea offer of 100 months at a judicial settlement conference with Judge Frantz. On November 26, 2002, we attempted a last-minute settlement with Judge Maurer. I told [Petitioner] that the 100-month plea offer would expire at noon that day. [Petitioner] started crying and said that he would die in prison if he took the plea offer. He said he has to go to trial. On November 27, 2002, my notes reflect [Petitioner's] ongoing refusal to commit to the plea offer. On November 29, 2002, this case was sent to Judge Wilson for trial. Judge Wilson tried to talk [Petitioner] into accepting the plea, but [Petitioner] wanted a postponement to hire his own attorney. Judge Wilson denied that request. On November 29, I told [Petitioner] to cut his losses now or he would face serious time if convicted. He opted for trial.

In other words, [Petitioner] was given ample warning about what he was facing by three different judges. He knew the risks of proceeding to trial, but consistently refused to take the plea offer and exercised his right to trial.

Resp. Exh. 116, pp. 1-2.

The PCR trial judge considered and rejected Petitioner's ineffective assistance of counsel claim. At the PCR hearing, the trial judge addressed the claim:

> [H]aving conducted hundreds, for sure, of these settlement conferences as a judge and knowing as I do the experience and demeanor of [the] three judges with whom [Petitioner] discussed his case, I feel confident that these judges did not attempt to assert the role of a defense attorney, but rather that they would have explained to him what the - the issues before him were.
>
> And based upon, again, my assessment of the evidence that's been produced by both parties, this was a one-issue case; and that is, whether or not there was a prospect that this girl, victim - well, maybe she was a young woman. I can't even remember her age, but I said - I saw part of the transcript of her - of the direct examination with her.
>
> And as best I could tell from that degree of transcript, she's pretty seriously limited. And if anybody in the world knew the extent of that limitation, it was [Petitioner].
>
> He was a family member. He was familiar with her. He was the one quite clearly taking advantage of her. And so I - I do not believe - and I believe petitioner has not proven - that these judges set about to try to explain the facts of the case and what the most likely outcome of those facts might be, but rather explained to him the risk that if, in fact, the jurors determine that this young girl was sufficiently disabled as to be incapacitated and incapable of giving consent, that he was in a very bad situation because there were multiple acts over a period of time.

He would've been in a position of trust with this girl. And – as a member of the family. And that the risk of consecutive sentences was almost inevitable, if not multiple consecutive sentences.

And so in my opinion these judges provided ample opportunity, which [trial counsel] took advantage of to explain to [Petitioner] that you're rolling some prettying [sic] big dice here and it's probably not a good idea.

That's what I believe [trial counsel] said to him, more or less. And my opinion that [Petitioner] at the age he was – he's about five years older than I am – and I can appreciate that if I was his age at the time this case was headed and I was having to make a decision and the – and the prosecutor was saying, "Well, I'll agree to eight years," that he might very well think, well, gosh, you know, I might not survive eight years, so I might as well see what happens with trial, and really probably didn't want to believe that having lived probably a pretty good life otherwise that he was going to end his life in such a horrible fashion and decided to take a direct chance at trial.

\* \* \*

So I find that – that the advice was appropriately given. It was within ABA standards.

[Petitioner] simply chose to take his chances and hope for the best and it did not turn out well for him. And as a result I find he has not proven his case.

I find no error was committed and I find that any error that might have been committed was ameliorated by the information provided by not one, but apparently three different judges who gave [Petitioner] an opportunity to change his mind.

Resp. Exh. 145, pp. 25-27. The PCR judge subsequently entered

judgment against Petitioner, explaining his decision as follows:

The court finds that Petitioner has not proven that any errors were committed by trial counsel. Nor has Petitioner proven that there is a reasonable probability

that even if any error alleged was proven, that the
result would have been different.

* * *

The chief issue before this court is whether trial
counsel failed to advise Petitioner to take an offer from
the DA of an 8-year sentence. Petitioner acknowledges
that he participated in settlement discussions with two,
seasoned trial judges. Since he admits that evidence
against him was extremely strong, the only point of such
discussions was to help Petitioner understand the risk of
a sentence longer than 8 years. The court finds
Petitioner's affidavit, exhibit 4, is not believable. On
the other hand, the court finds credible the affidavit of
trial counsel, exhibit 115. The court finds that
Petitioner knew he was exposed to Measure 11 &
consecutive sentences. Petitioner's assertions to the
contrary are not credible. Counsel for Petitioner
alleges that he has already proven that trial counsel's
performance was deficient. Trial Memo, p. 8. This is
not correct. No error has been proven.

Resp. Exh. 146, pp. 2-3.

In light of the evidence before the PCR trial court, this

Court concludes the decision to deny relief on Petitioner's claim

of ineffective assistance of counsel was not contrary to nor an

unreasonable application of *Strickland*. The PCR trial court

reasonably concluded that trial counsel did not commit any errors

and that, in any event, there was no reasonable probability that

the result would have been different. Accordingly, the PCR court's

decision is entitled to deference, and Petitioner is not entitled

to habeas relief.

## II. Cause and Prejudice to Excuse Procedurally Defaulted Claims Under *Martinez v. Ryan*

As noted, Petitioner concedes he procedurally defaulted the grounds alleged in Claim I, Claim III, and sub-parts A, D, and E of Claim V, but he contends his procedural default should be excused under *Martinez v. Ryan*, 566 U.S. 1, 132 S. Ct. 1309 (2012). In *Martinez*, the Supreme Court held that "[i]nadequate assistance of counsel at initial review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of counsel at trial." *Id.* at 1351. To satisfy *Martinez* a habeas petitioner must show the following: (1) the underlying ineffective assistance of counsel claim is substantial; (2) the petitioner had ineffective counsel during the state collateral proceedings; (3) the state collateral proceeding was the initial review proceeding for the claim; and (4) state law required the petitioner to bring the claim in the initial review proceeding. *Trevino v. Thaler*, 569 us 413, 133 S. Ct. 1911, 1919 (2013).

In Oregon, the state post-conviction procedure is the initial review proceeding for claims of ineffective assistance of trial counsel, and Oregon law requires that ineffective assistance claims be raised at post-conviction. *State v. Robinson*, 25 Or. App. 675, 550 P.2d 758, 758 (Or. App. 1976) (holding ineffective assistance of counsel claims may only be resolved in a post-conviction proceeding); *Sexton v. Cozner*, 679 F.3d 1150, 1159 (9th Cir. 2012)

(noting Oregon requires ineffective assistance claims to be raised in a collateral proceeding), *cert. denied*, 133 S. Ct. 863 (2013). The analysis, therefore, centers on prongs one and two.

Under the first *Martinez* requirement, a petitioner must come forward with facts to demonstrate that his underlying ineffective assistance claim is "substantial," or has "some merit." *Martinez*, 132 S. Ct. at 1318. To establish a claim is "substantial," a petitioner must generally show that trial counsel rendered deficient performance and that petitioner suffered prejudice as a result of counsel's errors. *Pinnel v. Belleque*, Civ. No. 3:06-cv-00828-BR, 2015 WL 225817, at *3 (D. Or. Jan. 15, 2015). Because the "substantiality" analysis under *Martinez* is not a merits review, but more akin to whether a certificate of appealability should issue, a habeas petitioner has satisfied the first prong of *Martinez* if he has shown that the merits of an ineffective assistance claim would be "debatable among jurists of reason" or the issues are deserving of further pursuit. *Detrich v. Ryan*, 740 F.3d 1237, 1245 (9th Cir. 2013) (en banc) (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)), *cert. denied*, 134 S. Ct. 2662 (2014). Stated inversely, a claim is "insubstantial" if "it does not have any merit . . . or is wholly without factual support." *Martinez*, 132 S. Ct. at 1319.

Under the second *Martinez* prong, a petitioner must show that he either had no counsel on the initial post-conviction review, or

that PCR counsel was "ineffective under the standards of *Strickland*." *Id*. at 1318. Thus, a petitioner must show that PCR counsel's performance in the initial-review collateral proceeding fell below constitutional standards. *Id*. at 1319. Not every error by PCR counsel will constitute "cause;" indeed, PCR counsel "is not necessarily ineffective for failing to raise even a nonfrivolous claim." *Sexton*, 679 F.3d at 1157. To show prejudice, a petitioner must show that if PCR counsel had not performed deficiently, the result of the PCR proceeding would have been different. *Clabourne v. Ryan*, 745 F.3d 362, 376-77 (9th Cir. 2014), *overruled on other grounds by McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015). This determination "is necessarily connected to the strength of the argument that trial counsel's assistance was ineffective." *Id*. at 377-78. The court may address either inquiry first, as resolution of one prong may obviate the need to address the other. *Martinez*, 132 S. Ct. at 1319.

### A. Claims I and III - Denial of Choice of Counsel and Impermissibly Vague Statute

In Claim I, Petitioner alleges the trial court violated his Sixth Amendment right to choice of counsel by denying Petitioner a continuance to retain a different attorney. In Claim III, Petitioner alleged the trial judge violated his due process rights because an element of his charged offenses, that the victim was "incapable of consent by reason of mental defect," is impermissibly

vague. Petitioner did not assign either of these claims as error on
direct appeal as required under Oregon law.[2]   Petitioner cannot
excuse these trial error claims on the basis of ineffective
assistance of PCR counsel. To the extent the Supreme Court
recognized in *Martinez* that ineffective assistance of PCR counsel
may be cause to excuse a procedural default, "it can *only* excuse a
claim of ineffective assistance of trial counsel, not a claim of
trial court error." *Nash v. Nooth*, Civ. No. 2:14-cv-02002-MA, 2017
WL 3083414, at *4 (D. Or. July 18, 2017) (citing *Martinez*, 566 U.S.
at 9) (emphasis added); *see also Davila v. Davis*, 137 S. Ct. 2058,
2067 (2017) (declining to extend *Martinez* beyond its narrow scope).
Accordingly, Petitioner cannot obtain habeas corpus relief on
Claims I and III.

**B.   Claim V(A) - Ineffective Assistance of Trial Counsel for
Failure to Assert Petitioner's Right to Counsel**

In sub-part A of Ground V, Petitioner alleges trial counsel
failed to adequately assert Petitioner's right to counsel of
choice.   In his state PCR petition, Petitioner alleged the
following claims:

> C.   Petitioner's trial attorney failed to make [an]
> adequate record to preserve petitioner's rights
> under the Constitutions of Oregon and of the United
> States, including his right to be represented by
> retained counsel of [his] choice.

---

[2]In Oregon, most trial errors must be raised by direct appeal
to the Oregon Court of Appeals. *Kellotat v. Cupp*, 719 F.2d 1027,
1030 (9th Cir. 1983).

24 - OPINION AND ORDER -

D. Petitioner's trial attorney failed to represent petitioner relative to the issue of whether his trial should be delayed so that petitioner could be represented by retained counsel of his own choice.

E. Petitioner's trial attorney failed to disclose to the trial judge information that would have necessarily revealed that he was not prepared for trial, and that petitioner's trial should be continued so that petitioner could be represented by retained counsel of his own choice. At that time, petitioner's trial attorney was subject to a conflict of interest with petitioner, such that disclosure of information by petitioner's trial attorney would undermine his own legal interests.

Resp. Exh. 113, p. 15. In his PCR appeal, however, Petitioner did not raise these claims. Consequently, Petitioner's default of the claim alleged in sub-part A of Claim V did not occur at the PCR trial stage, and *Martinez* is not available to excuse the default. *See Martinez*, 132 S.Ct. at 1315 (holding the exception does not extend to attorney errors in any proceeding beyond the first occasion the state allows a prisoner to raise a claim of ineffective assistance of trial counsel); *Davila*, 137 S. Ct. at 2066-67 (explaining *Martinez* applies only to initial-review PCR proceedings, and not appeals from such proceedings). Accordingly, Petitioner is not entitled to habeas relief on the claim alleged in sub-part A of Claim V.

### C. Claim V(D) - Ineffective Assistance of Trial and Appellate Counsel for Failure to Challenge Statute as Impermissibly Vague

Petitioner alleges trial counsel was ineffective in failing to challenge the statutes under which Petitioner was convicted as

impermissibly vague. Petitioner argues that "[t]he Oregon Supreme Court's clarification respecting the meaning of 'mental defect' leaves that meaning unconstitutionally vague. . . . Specifically, in an effort to clarify what the relevant statute's term 'appraising' means, [*State v.*] *Reed* holds that 'appraisal' must constitute an exercise of judgment and the making of choices based on an understanding of the nature of one's own conduct." Petitioner's Brief in Support, p. 13 (internal citation omitted).

Assuming that the Oregon Supreme Court's decision in *Reed* rendered the statute impermissibly vague, Petitioner cannot establish that post-conviction counsel was ineffective in failing to assert a claim that trial counsel should have challenged the statute on this basis because *Reed* was not decided until two years after Petitioner's trial. Post-conviction counsel could reasonably have determined at the time that assigning error to the actions of trial counsel based upon a decision that was not announced until after trial counsel's representation would be meritless. *See Williams v. Nooth*, 606 Fed. Appx. 380 (9th Cir. 2015) (reasonable PCR counsel would know that the court "does not mandate prescience, only objectively reasonable advice under prevailing professional norms") (citing *Sophanthavong v. Palmateer*, 378 F.3d 859, 870 (9th Cir. 2004), *cert. denied*, 136 S. Ct. 1528 (2016). Moreover, the *Martinez* exception doe not apply to claims of ineffective assistance of appellate counsel. *Davila*, 137 S. Ct. at 2062-63.

Accordingly, Petitioner's procedural default cannot be excused under *Martinez* because he cannot establish that PCR counsel was ineffective, and Petitioner is not entitled to habeas relief on sub-part D of Claim V.

> ### D. Claim V(E) - Ineffective Assistance of Trial and Appellate Counsel for Failure to Adequately Assert Insufficiency of the Evidence

In sub-part E of Ground V, Petitioner asserts trial and appellate counsel failed to adequately assert and argue that the trial evidence was insufficient to prove guilt beyond a reasonable doubt.[3] As discussed above, however, Petitioner has not established that there was insufficient evidence to support his conviction. Accordingly, Petitioner cannot excuse the default of his claim that trial counsel provided ineffective assistance through *Martinez*, as it is not a substantial claim and, in any event, PCR trial counsel would have recognized that trial counsel did adequately assert and argue that the trial evidence was insufficient to prove guilty beyond a reasonable doubt. As noted above, Petitioner cannot excuse the default of his appellate counsel, as *Martinez* does not extend to claims of ineffective assistance of appellate counsel. *Id*. As such, Petitioner is not entitled to relief on sub-part E of Claim V.

---

[3]In fact, as discussed above, trial counsel made this very objection, appellate counsel raised the claim as a preserved assignment of error on direct appeal, and the Oregon Court of Appeals issued a written decision on the claim.

### III. Claims Not Addressed by Petitioner

As noted above, Petitioner does not address the remaining claims in his Brief in Support of Amended Petition. Additionally, Petitioner does not attempt to refute Respondent's argument that these claims do not entitle him to habeas corpus relief. Accordingly, Petitioner has not sustained his burden of demonstrating why he is entitled to relief on his unargued claims. *See Lampert v. Blodgett*, 393 F.3d 943, 970 n. 16 (9th Cir. 2004) (petitioner bears burden of proving his case); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2003) (same). Nevertheless, the Court has reviewed Petitioner's unargued claims and is satisfied that Petitioner is not entitled to relief on the remaining claims alleged in his Petition for Writ of Habeas Corpus.

### CONCLUSION

For these reasons, the Court DENIES the Amended Petition for Writ of Habeas Corpus (ECF No. 25) and DISMISSES this action. The Court DENIES a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 11th day of ~~November~~ December, 2018.

ANNA J. BROWN
United States Senior District Judge